```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
```
| | |
|---|---|
| | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED:  July 15, 2020 |

DEBORAH FEINGOLD
D/B/A DEBORAH FEINGOLD PHOTOGRAPHY,

            Plaintiff,                                    18-CV-2055 (KMW)
                                                                **OPINION AND ORDER**

          v.

RAGEON, INC. and JOHN DOES 1–4,

            Defendants.
---------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

       Plaintiff Deborah Feingold has brought an action for copyright infringement against Defendant RageOn, Inc.  Pending before the Court are the parties' cross-motions for summary judgment.  At issue is whether Plaintiff owns valid copyrights for two photographs—one of Madonna and one of Keanu Reeves.  For the reasons set forth below, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion for summary judgment.

## BACKGROUND

       Plaintiff is a professional photographer known for her portraits of celebrities and public figures.  Two of those portraits figure centrally in the present lawsuit.

       The first is of the musical artist Madonna holding a red lollipop against her tongue ("the Madonna Photograph").  In 2008, Plaintiff compiled an unpublished book titled "Bright Moments Photographs + Philosophies" ("Bright Moments").  The Madonna photograph appeared on the cover of and inside the book.  Plaintiff registered Bright Moments with the United States Copyright Office under registration number VAu 1-091-877, effective December

1

19, 2009.  The parties disagree about whether the Bright Moments copyright protects the Madonna Photograph.

The second photograph at issue is of the actor Keanu Reeves (the "Reeves Photograph"). The Reeves Photograph appeared in the March 9, 1989 issue of Rolling Stone magazine. Plaintiff claims, but Defendant disputes, that Plaintiff applied for and secured a copyright registration for the Reeves Photograph with registration number VA0001233837, effective August 14, 2003.

In January of 2018, Plaintiff learned that RageOn.com ("RageOn") was displaying the Madonna and Reeves Photographs.

RageOn is a platform that allows vendors to design merchandise and sell it to consumers through RageOn's online marketplace.  RageOn processes purchases made through its online marketplace, collects payment from buyers, submits the buyers' orders to the merchandise manufacturers, and coordinates shipping from the manufacturers to the buyers.  The vendor who designed a given item receives a commission from RageOn when that item is purchased.

RageOn offered for sale through its marketplace three t-shirt varieties bearing the image of the Madonna Photograph and one t-shirt variety bearing the image of the Reeves Photograph.

Plaintiff initiated this action on March 7, 2018, and filed an amended complaint on May 31, 2018.  (ECF Nos. 1, 144.)  Discovery was ongoing when, on June 14, 2019, Defendant moved for summary judgment on its affirmative defense that Plaintiff's Complaint failed to state a claim upon which relief may be granted.  (ECF No. 58.)  Discovery closed on August 28, 2019. (ECF No. 50.)  On October 17, 2019, Plaintiff filed a cross-motion for summary judgment on all

her claims: copyright infringement, contributory copyright infringement, and vicarious copyright infringement.[1]  (ECF No. 123.)

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir. 2002).  A court considering a motion for summary judgment must view the evidence in the light most favorable to the party against whom summary judgment is sought, and must draw all reasonable inferences in that party's favor.  *See L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998),

Whether a disputed issue of fact exists is for the court to decide.  *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant can satisfy its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

Not every disputed fact is material, nor every issue genuine, within the meaning of Rule 56.  A fact is "material" in the summary judgment context when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] Plaintiff's briefing does not address contributory or vicarious copyright infringement.  Those claims are deemed abandoned.  *See Wu v. John Wiley & Sons, Inc.*, 2015 U.S. Dist. LEXIS 120707, at *42 (S.D.N.Y. Sep. 10, 2015) (Peck, M.J.) ("Courts in this Circuit routinely address contributory and vicarious copyright infringement as separate claims from direct infringement.") (collecting cases); *see also, e.g.*, *Johannes Baumgartner Wirtschafts-und Vermoegensberatung GMBH v. Salzman*, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013) ("[A] Court need not entertain an argument that was not briefed.").

248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The same standards apply when a court is resolving cross-motions for summary judgment.  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

### B. Copyright Infringement Standard

The Copyright Act of 1976 grants copyright owners the exclusive right to reproduce their copyrighted work, to prepare derivatives of the work, and to sell copies of the work.  17 U.S.C. § 106; *see Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546–47 (1985).  To establish liability for an infringement claim, a copyright owner must prove two principal elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361(1991)).

Regarding the ownership element, a certificate of registration from the United States Register of Copyrights within five years of first publication of a work "constitutes prima facie evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted."  *Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 98 (2d Cir. 1999).  This presumption "orders the burdens of proof," relieving a purported copyright owner of any duty "in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the [alleged infringer], by effectively challenging them, shifts the burden of doing so to the [purported owner]."  *Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985) (quoting H. Rep. No. 1476, 94th Cong., 2d Sess. 157, reprinted in 1976 U.S. Code Cong.

4

& Ad. News 5659, 5773). "Generally speaking, the presumption of validity may be rebutted '[w]here other evidence in the record casts doubt on the question.'" *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)). Where a work was registered more than five years after its first publication, the evidentiary weight to be accorded the certificate of registration is within the court's discretion. *Stern v. Lavender*, 319 F. Supp. 3d 650, 669 (S.D.N.Y. 2018) (Engelmayer, J.) (citing 17 U.S.C. § 410(c)).

The copying element comprises two requirements: actual copying and improper appropriation. Actual copying may be established either by direct or circumstantial evidence that the alleged infringer had access to the protected work and that the allegedly infringing copy bears a "probative similarity" to the protected work. *See Ringgold v. Black Entm't Television*, Inc., 126 F.3d 70, 75 (2d Cir. 1997). Similarities between works are probative of copying if those similarities "would not be expected to arise if the works had been created independently." *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F.Supp. 1328, 1337 (S.D.N.Y. 1997) (Koeltl, J.). Once actual copying has been established, the copyright owner must satisfy the "improper appropriation" requirement by demonstrating that the alleged copy bears "substantial similarities" to the protected elements of the copyrighted work; substantial similarities are those that would cause an average lay observer to "recognize the alleged copy as having been appropriated from the copyrighted work." *Durham Indus.,* 630 F.2d at 912 (internal quotation and citation omitted).

**DISCUSSION**

**I.      Copyright Infringement: The Madonna Photograph**

**A. Ownership of a Valid Copyright**

Bright Moments—Plaintiff's book of photographs, including the Madonna Photograph—is an unpublished collective work. *See* 17 U.S.C. § 408(c). "Registration of an unpublished 'collection' extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection." 37 C.F.R. 202.3(b)(4)(i). However, "a published design included in an unpublished collection copyright registration application cannot be registered as part of the collection." *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 235 (S.D.N.Y. 2012) (McMahon, J.).

Plaintiff claims that her copyright for Bright Moments under Copyright Registration No. VAu 1-091-877 protects the Madonna Photograph. Defendant argues that the Madonna Photograph falls outside of the coverage of the Bright Moments copyright because the photograph was published prior to its inclusion in Bright Moments.

Specifically, Defendant alleges that the Madonna Photograph was published in Star Hits magazine in 1982 or on a Madonna "fanblog" called Madonna Tribe in 2006. The Court finds that the Madonna Photograph remained unpublished when it appeared in Bright Moments and when Bright Moments was registered. The Bright Moments copyright therefore protects the Madonna Photograph.

   *i.      Star Hits Magazine*

Defendant has provided no evidence that the Madonna Photograph appeared in Star Hits magazine "sometime in 1982." (Def. Supp. Opp'n at 3, ECF No. 146.) Defendant points out that Plaintiff likely captured the Madonna Photograph during a photoshoot for Star Hits

6

magazine.  Text accompanying the Madonna Photograph in Bright Moments ("May 1, 1982, 11:15 – 11:35 am, Star Hits magazine, New York City") indicates as much.  (Def. 56.1 Stmt ¶ 32, ECF No. 68.)  Plaintiff's statements in two interviews also seem to suggest that the Madonna Photograph originated in a photoshoot for Star Hits magazine.  (*Id.* at ¶¶ 35, 36.)  But this fact does not establish that Star Hits published any of the images produced during the photoshoot, much less that Star Hits published *the* Madonna Photograph.

Plaintiff has sworn that, to the "best of her information and belief," the Madonna Photograph "did not appear in Star Hits magazine in 1982."  (Pl. Reply Affidavit ¶ 3, ECF No. 150.)  She states that she included the Madonna Photograph in Bright Moments because it was an image that she "really liked, but one that had not [sic] used publicly before."  (*Id.* ¶ 6.)  Notably, Defendant declined to depose Plaintiff.  Defendant's conclusory allegations could not convince a reasonable jury that the Madonna Photograph was published in Star Hits magazine in 1982.

  *ii.* *Madonna Tribe*

Defendant also argues that the Madonna Photograph was published on the Madonna Tribe fanblog.  But publication entails more than mere display, and Defendant makes no effort to traverse the legal gap between these concepts.

Under the Copyright Act, "publication" means "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; critically, "[a] public . . . display of a work does not of itself constitute publication."  17 U.S.C. § 101.  "Merely posting a digital file . . . on the Internet lacks the element of commercial exploitation" that defines publication.  *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 197 n.45 (S.D.N.Y. 2006) (Kaplan, J.); *see also McLaren v. Chico's FAS, Inc*., 2010 U.S. Dist. LEXIS

120185, at *12 (S.D.N.Y. Nov. 9, 2010) (Rakoff, J.) (Plaintiff's "claim that images composing the Collection were posted on her website would not in any event suffice to plead 'publication.'").

Plaintiff gave the Madonna Photograph to Madonna Tribe to accompany an interview she conducted for the fanblog. (Pl. Reply Affidavit ¶ 5.) The record contains no evidence that Plaintiff provided the Madonna Photograph to Madonna Tribe to reap any commercial advantage. Defendant does not argue that any aspect of the fanblog, the interview, the fanblog owner's actions, or Plaintiff's actions caused the Madonna Photograph to assume the status of "published," rather than merely displayed. Defendant's claim that the Madonna Photograph was published on Madonna Tribe is, like the Star Hits claim, conclusory and conjectural.

### B. Actual Copying and Appropriation

Defendant confines its arguments to the copyright ownership element of infringement; Defendant does not dispute actual copying or appropriation. Plaintiff has supplied ample proof that Defendant accessed the Madonna Photograph and offered for sale items that are probatively and substantially similar to the original work in three places on the RageOn marketplace. Plaintiff is entitled to judgment as a matter of law on her claim that Defendant infringed her valid copyright of the Madonna Photograph.

### II. Copyright Infringement: The Reeves Photograph

### A. Ownership of a Valid Copyright

The parties' dispute regarding the Reeves Photograph is limited to whether the federal copyright registration with registration number VA0001233837 pertains to the Reeves Photograph. Defendant states that Plaintiff is not in possession of the certificate of registration for the Reeves Photograph, and therefore cannot prove that the copyright with registration

8

number VA0001233837 protects the Reeves Photograph, rather than some other unspecified work. But Plaintiff's failure to produce the certificate of registration does not foreclose her from establishing by other means that the copyright with registration number VA0001233837 protects the Reeves Photograph. *See Whitehead v. Mix Unit, LLC*, 2019 U.S. Dist. LEXIS 15560, at *6 (S.D.N.Y. Jan. 31, 2019) (Cott, M.J.) (Although a certificate of registration "would have been preferable," plaintiff proved ownership of a valid copyright by providing the copyright registration number for her design, which "correspond[ed] with a relevant entry in the United States Copyright Office's Public Catalog").

Indeed, Plaintiff has presented overwhelming evidence that she owns a valid copyright for the Reeves Photograph under registration number VA0001233837. The Public Records Catalog of the Library of Congress shows that registration number VA0001233837 protects a "photoprint" owned by claimant Deborah Feingold titled "Keanu Reeves," which appeared in Rolling Stone on March 9, 1989 on page 31. (Fladgate Affidavit ¶ 34, Ex. H, ECF No. 125.) Page 31 of the March 9, 1989 issue of Rolling Stone contains the Reeves Photograph, credited to Plaintiff. (*Id.* ¶¶ 38–39, Ex. I.) Plaintiff has acquired the certified deposit copy of the photograph registered under registration number VA0001233837 from the Library of Congress; it is the Reeves Photograph. (*Id.* ¶¶ 49–50, Ex. L.) Plaintiff has unequivocally stated that she took the Reeves Photograph for Rolling Stone magazine, that it appeared in Rolling Stone magazine on page 31 of the March 9, 1989 issue, that she applied for a copyright registration for the Reeves photograph, that the Public Records Catalog entry for registration number VA0001233837 accurately details the Reeves Photograph, and that she has licensed and received royalties for the Reeves Photograph. (Pl. Affidavit ¶¶ 9–14, ECF No. 99.) She has submitted relevant royalty statements for the Reeves Photograph. (*Id.* at Ex. G.) There can be no genuine

dispute that Plaintiff owns a valid copyright for the Reeves Photograph under registration number VA0001233837.

### B. Actual Copying and Appropriation

Again, whether Defendant actually copied and appropriated the Reeves Photograph is not the subject of serious disagreement. Defendant cannot and does not deny that RageOn offered for sale an item bearing a reproduction of the Reeves Photograph that is nearly identical to the original work. Defendant notes, and Plaintiff acknowledges, that the RageOn image is a "mirror" of the Reeves Photograph, so that it shows Keanu Reeves facing to the left rather than to the right. But this type of manipulation can be accomplished in a matter of seconds by anyone with a basic image-editing application. The similarities between the RageOn image and the original work remain highly probative of copying, and a lay observer would readily recognize that the RageOn image was appropriated from the Reeves Photograph. Plaintiff is entitled to judgment as a matter of law on her claim that Defendant infringed her valid copyright of the Reeves Photograph.

### III. The Digital Millennium Copyright Act Safe Harbor

Defendant argues that it is entitled to immunity under The Digital Millennium Copyright Act of 1998 ("DMCA"). The DMCA "gives qualifying Internet service providers protection from liability for copyright infringement when their users upload infringing material on the service provider's site and the service provider is unaware of the infringement." *Capitol Records, Ltd. v. Vimeo, Ltd.*, 826 F.3d 78, 81 (2d Cir. 2016) (citing 17 U.S.C. § 512(c)). In effect, the DMCA provides a safe harbor to "insulate[] service providers from liability for infringements of which they are unaware, contained in material posted to their sites by users, so

as to make it commercially feasible for them to provide valuable Internet services to the public."

*Id.* at 82.

The safe harbor provision will apply only if the service provider:

(A)
    (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
    (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
    (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement . . ., responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. §§ 512(c)(1)(A)-(C).

Section 512(c) also sets forth a notification scheme that requires service providers to "designate[] an agent to receive notifications of claimed infringement," *id*. § 512(c)(2), and specifies the components of a proper notification, known as a "takedown notice," to that agent, *see id*. § 512(c)(3). Actual knowledge of infringing material, awareness of facts or circumstances that make infringing activity apparent, or receipt of a takedown notice each trigger an obligation to expeditiously remove the infringing material.

Defendant does not qualify for the protections of the DMCA for at least two reasons.

First, Defendant received a financial benefit directly attributable to the infringing activity—in the form of revenue from the sale of infringing merchandise—and Defendant had the right and ability to control that activity. Defendant's reliance on *Downs v. Oath, Inc.* on this point is misplaced. 385 F. Supp. 3d 298, 307 (S.D.N.Y. 2019) (Rakoff, J.). In *Downs*, the media brand HuffPost ran an article by one of its independent contributors on its news site. The article

11

contained a photograph by Kevin Downs, the plaintiff.  Downs attempted to show that HuffPost received a financial benefit attributable to the infringing photograph because HuffPost profited from advertisements that appeared alongside the article.  The court rejected this argument; advertising revenue did not establish a sufficient "connection between the allegedly infringing activity and the financial benefit that HuffPost received."  *Id.*   Here, RageOn sold t-shirts bearing infringing images.  The connection between the infringing activity and RageOn's financial benefit could hardly be more direct.  Defendant also relies on *Downs* in claiming that it lacked the ability to control the behavior of users who designed the infringing merchandise.  RageOn is an online retailer.  Commonsense dictates that RageOn had the "right and ability" to control what it sold, and Defendant offers no evidence to the contrary.

Second, Defendant did not expeditiously remove the infringing merchandise.  Plaintiff's counsel emailed Defendant a DMCA-compliant takedown letter on January 8, 2018, alerting Defendant to the infringing items.  (Pl. 56.1 Stmt  ¶ 43, ECF No. 123; Fladgate Affidavit ¶¶ 54, 104, Exs. M, EE.)  On January 11, 2018, Defendant responded that it would take the infringing content offline within 24 hours.  (Pl. 56.1 Stmt  ¶ 45; Fladgate Affidavit ¶ 63, Ex. H.)  On January 24, 2018, more than two weeks after submitting the take-down letter, Plaintiff's counsel conducted successful test-buys of the three t-shirts bearing images of the Madonna Photograph.  (Pl. 56.1 Stmt  ¶¶ 48–49; Fladgate Affidavit ¶ 30.)  On January 26, 2018, Defendant told Plaintiff's counsel that the Madonna items had been removed from the website.  At least two infringing items remained available after that date.  (Pl. 56.1 Stmt  ¶¶ 53, 70; Fladgate Affidavit ¶¶ 64–66, Ex. N.)  On February 8, 2018, Defendant emailed Plaintiff's counsel again stating that the infringing items had been removed and falsely representing that no sales had been made on those items.  (Pl. 56.1 Stmt  ¶ 80; Fladgate Affidavit ¶ 68, Ex. P.)  Defendant admits that it took

at least 18 days to remove the infringing Reeves item, and 18 to 23 days to remove the infringing Madonna items. (Def. Supp. Opp'n at 9.) In this context—and, particularly, in light of Defendant's initial assurance that it would act within 24 hours—Defendant's efforts to remove the infringing items cannot be considered expeditious.

### IV.     Damages and Attorneys' Fees

A copyright owner whose rights have been violated may elect to recover either statutory damages or actual damages and profits. 17 U.S.C. § 504(c)(1). Plaintiff has chosen statutory damages. Statutory damages generally must fall between $750 and $30,000 for the infringement of a particular work. If the Court determines that the Defendant's infringement was willful, it may, in its discretion, enhance the statutory damages award up to $150,000 per infringed work. *See id.* § 504(c)(2). Alternatively, if the infringer "was not aware and had no reason to believe that" its acts "constituted an infringement," the Court may "reduce the award of statutory damages to a sum of not less than $200." *Id.* In determining a just damages awarded, courts are guided by factors including: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Plaintiff also seeks attorneys' fees and costs. Section 505 of the Copyright Act permits district courts to "award a reasonable attorney's fee to the prevailing party" in copyright actions. 17 U.S.C. § 505. The statute provides "no precise rule or formula" for determining the appropriateness or amount of a fee award. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (internal quotation marks omitted). Rather, courts must exercise "equitable discretion." *Id.*

"[S]everal nonexclusive factors" inform this exercise of discretion, including "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) (alteration in original) (quoting *Fogerty*, 510 U.S. at 534 n.19). "Although objective reasonableness [of the losing party's position] carries significant weight, courts must view all the circumstances of a case on their own terms." *Kirtsaeng*, 136 S. Ct. at 1989.

The Court reserves ruling on Plaintiff's request for damages, fees, and costs pending the submission of supplemental briefing. Although Plaintiff has devoted some attention to these issues, including in the declarations of Mr. Fladgate, Defendant has not addressed them. No later than September 8, 2020, Plaintiff shall submit a supplemental request for any damages, attorneys' fees, and costs she seeks. Defendant shall respond to that submission no later than October 6, 2020. Plaintiff may reply no later than October 20, 2020.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied and Plaintiff's motion for summary judgment is granted. The parties shall file supplemental submissions on damages, attorneys' fees, and costs as specified above.

SO ORDERED.

Dated: New York, New York
       July 15, 2020

                                              /s/ Kimba M. Wood
                                              KIMBA M. WOOD
                                         United States District Judge