UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DEBORAH FEINGOLD D/B/A
DEBORAH FEINGOLD PHOTOGRAPHY                    **Case No.: 1:18-cv-2055
                                                (KMW)(GWG)**

                              Plaintiff,

              -against-                          **DECLARATION OF
                                                CHRIS FLADGATE**


RAGEON, INC., JOHN DOES 1-4,

                              Defendants.
-----------------------------------------------------------x

I, Chris Fladgate, hereby declare under penalty of perjury:

1.      I am a member of the Bar of this Court and am a partner at the firm, Garson, Segal,

        Steinmetz, Fladgate LLP, attorneys for Plaintiff, Deborah Feingold d/b/a Deborah

        Feingold Photography in the above-titled action and I am fully familiar with the facts and

        circumstances of this action and make this declaration based on my personal

        knowledge.

2.      I make this declaration in support of Plaintiff's Supplemental Request for Damages,

        Attorneys' Fees, and Costs ("Supplemental Request"), made at the invitation of the

        Court. (Dkt. # 153, 14)

**Prior Declarations Concerning Plaintiff's Damages, Attorneys' Fees, and Cost**

3.      I bring to the Court's attention the following declarations that I have made in this matter

        concerning Plaintiff's damages, attorneys' fees, and costs:

(a)     Dkt. # 110 ("Declaration of Chris Fladgate" in support to Defendant's opposition

to the Court's order to show cause as to why sanctions should not be imposed

on Defendant and its counsel);

(b)     Dkt. # 125 ("Declaration of Chris Fladgate" in support to Plaintiff's motion for

summary judgement); and

(c)     Dkt. # 151 ("Reply Declaration of Chris Fladgate" in further support to Plaintiff's

motion for summary judgement).

4.      For reasons of efficiency, each of the above references are repeated and incorporated

within this declaration, unless otherwise expressed.

**Plaintiff is a serial copyright and trademark infringer**

5.      I have reviewed the Pacer system for maintaining court records and determined that

Plaintiff is the named-defendant in a number of actions where copyright or trademark

infringement is alleged, as set forth below.

6.      *Pokemon Company International Inc. v. RageOn, Inc.*, Case No. 2:15-cv-1265 (W.D.

Wash. Aug. 11, 2015) where copyright infringement was alleged.

7.      *Sharp Shirter Inc. v. RageOn, Inc.*, Case No. 1:17-cv-1099 (N.D. Ga. Mar. 27, 2017) where

copyright infringement was alleged.

8.      *Ross v. RageOn, Inc.*, Case No. 3:17-cv-504 (E.D. Va. Jul. 14, 2017) where copyright

infringement was alleged.

9.      *Taieb v. RageOn, Inc.*, Case No. 2:18-cv-4960 (C.D. Cal. Jun. 04, 2018), commenced after

this matter, where copyright infringement was alleged, and default judgment was

entered against Defendant.

10.    *Ward v. RageOn, Inc.*, *et al*, Case No. 1:19-cv-1935 (S.D.N.Y. Feb. 28, 2019), where I

appeared as trial counsel, commenced after this matter, where copyright infringement

was alleged, and damages of $60,000 were awarded against Defendant for willful

infringement of a single work (*Ward*, Dkt. # 47; Dkt. # 48). Subsequently, attorneys' fees

in the amount of $34,310.00 and costs of $2,737.20 were also ordered against

Defendant. (*Ward*, Dkt. # 62)

11.    *Lopez v. Adidas America, Inc., et al.*, Case No. 1:19-cv-7631 (S.D.N.Y. Aug. 15, 2019)

commenced after this matter, where trademark infringement was alleged, and default

judgment was entered against Defendant.

12.    *Atari Interactive, Inc. v. Defendant, Inc.* case No. 2:19-cv-10806 (C.D. Cal, Dec. 20, 2019),

commenced after this matter, where trademark infringement was alleged, and default

judgment was entered , and then set aside, against Defendant.

13.    In summary, eight actions commenced against Defendant all alleging copyright or

trademark infringement, one finding of willful damages in this district, and one default

judgment that has been entered against Defendant (and another default judgement

recently set aside).

**Defendant's cooperation in providing evidence concerning the value of the infringing
materials; Defendant's conduct and attitude.**

<u>General</u>

14.    As may have been apparent from my earlier declarations (Dkt. # 110; Dkt. # 125; Dkt. #

151), securing Defendant's cooperation in this matter has, generally, been a fool's

errand, and, in relation to determining the value of the infringing materials, it has been nigh on impossible.

15.    A scattered history of Defendant's (and its counsel's) lack of cooperation is set forth in the record of this matter:

(a)    At Dkt. # 110, ¶¶ 40-46, in relation to Defendant's attitude towards document discovery;

(b)    At Dkt. # 125, ¶¶ 54-122, 144-150 in relation to Defendant's efforts to conceal the fact that sales had been of the infringing materials; and

(c)    At Dkt. # 151, ¶¶ 20-27, in relation to Defendant's professed lack of knowledge concerning sales of the infringing materials, and the length of time the infringing materials were displayed on Defendant's website.

Conduct by Defendant prior to engaging its first counsel

16.    Prior to filing its Answer (Dkt. # 20), Defendant engaged in the following dilatory tactics.

17.    First, Defendant tried to evade service when, having filed the Complaint (Dkt. # 7) and obtained a summons for service on Defendant (Dkt. # 5) on March 8, 2018, my firm researched and determined that Defendant is an Ohio foreign corporation (which Defendant admits) with a place of business in Cleveland, Ohio.

18.    My firm then engaged a local process server in Ohio to effect service of the Summons and Complaint, however, Defendant refused to accept service at its nominated address in Ohio. Attached as **Exhibit A** is a true and correct copy of an email received from the Ohio process servers my firm engaged.

19.     Accordingly, Plaintiff incurred additional expense attempting to serve Defendant both at its offices in California and via the Delaware Secretary of State.

20.     Then, on April 10, 2018, Mr. Krilivsky called me. I informed Mr. Krilivsky that I was on vacation, generally uncomfortable speaking to a party without legal representation, and that Mr. Krilivsky should send me an email.

21.     Across April 10, 11 and 12, 2018, emails were exchanged between Mr. Krilivsky and me, that also copied in Defendant's registered agent in Delaware (who, it appears had accepted service on behalf of Defendant).

22.     In the email exchange, Mr. Krilivsky accused me and/or Plaintiff of "completely wasting the US and State's time, my time, and money," being a "bully" and "fraudulent" and that he would "spend as much money as needed to make an example out of [me] and [my] company."(Dkt. # 11-1, 7)

23.     The email exchange ended with Mr. Krilivsky stating "I expect that you'll drop this before we waste time and money filing a response as it will only increase your debt" followed by a picture inserted by Mr. Krilivsky of my then 3 year old daughter displayed on one of Defendant's garments. (Dkt. #11-1, 3, 6)

24.     Below is a redacted version of Mr. Krilivsky's email.



25. I understood this email to be a threat and received it as such. (Dkt. #11-1, 3)

26. I spoke to my client who also perceived this email to be a threat. (Dkt. #11-1, 3)

27. I spoke to my wife, who is an attorney, and she also perceived this email to be a threat.

   (Dkt. #11-1, 3)

28.    I spoke to my partners in legal practice, and they also perceived this email to be a

threat. (Dkt. #11-1, 3)

Conduct by Defendant and its first counsel

29.    About a month later, Defendant engaged its first counsel in this matter, Andrew Gerber.

30.    On May 25, 2018, at Mr. Gerber's request, I provided two documents demonstrating

that, as of January 30, 2018, Plaintiff's photograph of Madonna ("Madonna

Photograph") was still "live" on at least two Vendor URLs. A true and correct copy of the

email and its attachments is attached as **Exhibit B**. The two attachments are printouts of

the Defendant's website from January 30, 2018 and reflect the same information as Dkt.

# 126-2 and Dkt. # 126-3.

31.    Prior to this point, Mr. Gerber had asserted all Vendor URLs had been removed "within

approximately 14 days of receiving notice."

32.    On September 19, 2018, Mr. Krilivsky aggressively sought to communicate with my

client and her daughter. This is dealt with in more detail in Ms. Feingold's declaration,

but caused concern to both Ms. Feingold and I especially in light of Mr. Krilivsky's April

12, 2018 email discussed above.

33.    As result of Mr. Krilivsky's conduct on September 20, 2018, I emailed Mr. Gerber and

requested that all further communication between the parties be routed via counsel. A

true and correct copy of this email is attached as **Exhibit C**.

34.    On September 22, 2018, Mr. Krilivsky emailed both Plaintiff and me a screenshot

allegedly showing when the various Vendor URLs were deleted. A true and correct copy

of this screenshot is attached as **Exhibit D**.

35.     The September 22, 2018 screenshot contains verifiably false information in the

"deleted_at" column – specifically, the screenshot represents that each of the Vendor

URLs were deleted on January 10, 2018. This may be more clearly seen at **Exhibit D**.



This is the same document as Dkt. # 125-30. Further, Mr. Krilivsky testified that he

believed the "deleted_at" column represent when the Vendor URLs were removed.

(Dkt. # 125, ¶¶ 96-97; Dkt. # 125-2; 180:4-181:9, 190:24-191:7, 194:13-195:8)

36.     On September 25, 2018, Mr. Gerber filed with the Court sealed documents to withdraw

as counsel. The redacted versions of those documents were filed on the ECF system on

October 17, 2018. (Dkt. # 29) To the extent that the unredacted documents reveal

Defendant's conduct or attitude – particularly in light of the close temporal proximity

between Mr. Krilivsky providing the above manipulated screenshot and Mr. Gerber's

withdrawal as counsel – we submit those documents should be considered and

evaluated by the Court in the present matter.

Conduct by Defendant and its second counsel

37.    Pursuant to Judge Gorenstein's order permitting Mr. Gerber to withdrew, Defendant

       had until November 5, 2018 to engage new counsel before Plaintiff could move for

       default. (Dkt. # 32) Defendant then waited until the last minute, November 3, 2018,

       before instructing new counsel, Matthew Heerde, to appear. (Dkt. # 35)

38.    On or about December 27, 2018, Defendant's counsel served its discovery responses

       which were no more than form objections to both requests for production and in

       response to interrogatories, and provided no substantive materials, information, or

       responses to interrogatories. These form objections, are included within Defendant's

       Supplemental Responses to Interrogatories (Dkt. # 125-1), and its Supplemental

       Responses to Requests for Production (Dkt. # 125-29).

39.    On January 4, 2019, Defendant's second counsel also represented that all purported

       sales had been subsequently cancelled, and then produced a two screenshots

       purporting to show such cancelled sales. (Dkt. # 125, ¶ 89; Dkt. # 125-25, 2, 6-8) True

       and correct copies of the screenshots sent by Mr. Heerde are attached as **Exhibit E**. Here

       is a part of each screenshot emailed by Mr. Heerde:



These may be more clearly seen at **Exhibit E.**

40.     However, such cancelled sales were then included in Defendant's supposed list of final

sales, produced on July 2, 2019.



A better version of this image is located at Dkt. # 125-27.

41.     The fourth and fifth lines in order_id column immediately above, contain the same

numbers as in the image purportedly showing canceled orders. (Dkt. # 125, ¶¶ 91-92)

Conduct by Defendant and its third counsel

42.     On January 8, 2019, Ms. Betty Tufariello became Defendant's third counsel in this

        matter. (Dkt. ## 42, 43).

43.     Ignoring the form objections served on December 27, 2018, Defendant did not formally

        respond Plaintiff's discovery requests served on November 27, 2018, despite multiple

        reminders from Plaintiff's counsel, until March 29, 2019. (Dkt. # 125-1; Dkt. # 125-29)

44.     Even then, Defendant asserted that it only possessed 20 pages of relevant document

        discovery – 11 of which were already in Plaintiff's possession. (Dkt. # 100, ¶¶ 40-46)

*Scheduling Defendant's Deposition*

45.     I then sought to arrange the deposition of Defendant's Rule 30(1)(b)(6) representative.

        My initial (and substantial) attempts are set forth in my letter to Judge Gorenstein dated

        May 6, 2019 (Dkt. # 51), which was only the start of a quixotic two-and-a-half month

        period.

46.     On May 9, 2019, Judge Gorenstein, noting that Ms. Tufariello had not responded to my

        letter in accordance with the Court's Individual Practices, ordered the deposition to

        proceed and for Ms. Tufariello, within two business days, to confirm her client's

        attendance at the deposition. (Dkt. # 52)

47.     Between May 9 and May 15, 2019, Ms. Tufariello did not so confirm. (Dkt. # 53; Dkt. #

        110, ¶ 8)

48.     On May 15, 2019, in a letter to the Court, I set forth Ms. Tufariello's and Defendant's

        breach of Judge Gorenstein's May 6, 2019 Order. (Dkt. # 53)

49.  On May 17, 2019, under the threat of Court imposed sanctions (Dkt. # 54), Ms.

Tufariello wrote to the court in which:

   (a)  she admitted that she "miscalculated" how to count to two (Dkt. # 55, 1-2). Ms.

   Tufariello took responsibility for her error and represented to the Court that it

   would not happen again; and

   (b)  in an attempt to further delay the progress of this matter, she informed the

   Court that she intended to move for partial summary judgment on behalf of

   Defendant. (Dkt. # 55, 2-6)

50.  Later on May 17, 2019, Judge Gorenstein issued an Order requiring that Defendant's

deposition occur on May 29, 2019 and emphasized "discovery will not be stayed

pending the disposition of any future motion for a stay." (Dkt. #56)

51.  On May 23, 2019, I agreed to June 13, 2019 as the deposition date based on

representations made by Ms. Tufariello concerning her client's availability.

52.  On June 5, 7, and 10, 2019, my emails to Ms. Tufariello concerning the Defendant's

representative to be deposed went unanswered. A true and correct copy of these emails

are included in the attached **Exhibit F**.

53.  On June 11, 2019, I again emailed Ms. Tufariello and, this time, Ms. Tufariello confirmed

that Mr. Krilivsky (Defendant's CEO) would be the Defendant's representative at the

deposition, scheduled to take place less than 48 hours later. A true and correct copy of

this email is attached as **Exhibit G**.

54.  On June 12, 2019, Ms. Tufariello informed me that "[Defendant] has decided that it will

not be attending its deposition tomorrow" because it did not believe that Plaintiff is the

copyright holder of the Photographs, and also because only *de minimis* sales of the Photographs were made. A true and correct copy of this email is included in the attached **Exhibit F**.

55.    On June 13, 2019, Ms. Tufariello and I conducted a "meet and confer" as required by Judge Gorenstein's Individual Practices.

56.    Subsequently, on June 13, 2019, I wrote to the Court, setting forth much of the above, and seeking sanctions and a conference with the Court. (Dkt. # 57)

57.    On June 14, 2019, apparently having nothing better to do, Ms. Tufariello filed Defendant's motion for partial summary judgment. (Dkt. # 58 et seq.) This motion was recently denied; (Dkt. # 153)

58.    Later on June 14, 2019, and despite the Court's express order on May 17, 2019 (Dkt. # 56), Ms. Tufariello moved to stay proceedings pending the resolution of Defendant's motion for partial summary judgement. Included in this letter was an admission to the Court that sales had, in fact, been made. (Dkt. # 91)

59.    Subsequently, on June 14, 2019, Judge Gorenstein issued another Order (Dkt. # 93) in which the Court:

(a)    denied the request for a stay and noted that Ms. Tufariello concedes her client violated the May 17, 2019 Order (Dkt. # 56);

(b)    ordered the Defendant deposition to occur on June 24, 2019;

(c)    ordered Ms. Tufariello to show cause "<u>on or before July 1, 2019</u>" why she and her client should not be sanctioned; and

(d)     noted in a footnote that Defendant cannot genuinely claim to be trying to avoid waste of the "court's resources" given its prior behavior. (Dkt. # 93, n 2)

60.     On July 2, 2019, at approximately 4:27 p.m., as mentioned above, Defendant's counsel provided its twenty-first page of discovery in this matter, purporting to be a list of sales of the Madonna Photograph. (Dkt. # 125, ¶¶ 90-91; Dkt. # 125-26; Dkt. # 125-27; Dkt. # 125-28)

61.     On July 3, 2019, the deposition of Mr. Krilivsky occurred. (Dkt. # 125-2)

62.     The deposition was moved from June 24, 2019 to accommodate Mr. Krilivsky's schedule, even though Mr. Fladgate offered to conduct the deposition in San Francisco on June 24, 2019 and Mr. Krilivsky was vague, during his deposition, as to why he could not attend the deposition on June 24, 2019. (Dkt. # 110, ¶ 35(j); Dkt. # 125-2, 176:21-178:3)

63.     On July 5, 2019, four days after the deadline emphasized by Judge Gorenstein in the Court's June 14, 2019 Order (Dkt. # 93) had passed, Ms. Tufariello sought an extension of time to reply show cause as to why she and Defendant should not be sanctioned for their prior bad conduct. (Dkt. # 101)

64.     On July 8, 2019, Judge Gorenstein in granting Ms. Tufariello's request noted:

> That the defendant, under an order to show cause why it should not be sanctioned for disobeying a court order, would then disobey that very order to show cause by ignoring the deadline for defendant's submission is mind-boggling. No explanation is even given in this letter as to why defendant could not have complied with the 2-week time period allotted for the filing of its submission. Additionally, no explanation is given as to why the request for an extension comes after the deadline had already expired. (Dkt. # 102)

65.     On July 10, 2019, Ms. Tufariello filed her and Defendant's papers concerning the order
        to show cause in relation to sanctions. (Dkt. # 104)

66.     On July 24, 2019, Mr. Fladgate filed Plaintiff's response. (Dkt. # 109; Dkt. # 110)

67.     The above "show cause" submissions remain pending before Judge Gorenstein.

68.     As I noted in my declaration at the time (Dkt. #110, ¶ 58), in order to simply schedule
        the deposition: I sent approximately 32 emails; reviewed approximately 20 emails from
        Ms. Tufariello; I wrote to the Court on three separate occasions; my firm reviewed and
        considered three separate submissions made by Ms. Tufariello to the Court; my firm
        reviewed and took action to comply with five separate orders of the Court; my firm has
        undertaken duplicative work; and I needed to confer with Ms. Feingold on multiple
        occasions.

69.     In addition to the above, I also attended numerous telephone calls with Ms. Tufariello.

<u>Conduct by Defendant and other counsel</u>

70.     On July 23, 2020, Ms. Tufariello moved this Court to withdraw as counsel. (Dkt. # 154;
        Dkt. # 155)

71.     On July 27, 2020, the Court denied Ms. Tufariello's motion noting that "the Court will
        not permit Ms. Tufariello to withdraw as counsel until Defendant has retained
        replacement counsel. Thus, Ms. Tufariello's motion to withdraw is denied. Once new
        counsel has been retained, Ms. Tufariello may refile her motion to withdraw, and new
        counsel may seek any extensions necessary." (Dkt. # 159)

72.     As of September 8, 2020, Defendant has not retained new counsel.

73. However, on September 4, 2020, counsel for Defendant in the above-cited *Atari Interactive* matter (which is pending in the Central District of California), Arash Beral, contacted my partner, Robert Garson, ostensibly to discuss settlement of the above-cited *Ward* case.

74. As set forth in Mr. Garson's declaration, Mr. Beral asked Mr. Garson multiple times about this matter.

75. Accordingly, Mr. Beral is aware of this matter.

76. As such, and in anticipation of Mr. Beral being appointed as Defendant's fourth counsel in this matter, I will send courtesy copies of these submissions to Mr. Beral within 24 hours of filing.

77. Consequently, should Mr. Beral or his firm, be officially retained in relation to this matter, Ms. Feingold will likely oppose any extensions sought in opposition to these submissions.

**Ms. Feingold's conduct and attitude**

<u>Generally</u>

78. I have been Ms. Feingold's personal attorney since 2015.

79. Since then, Ms. Feingold has demonstrated that, while she is prepared to enforce her intellectual property rights, she also understands the value of reaching an early settlement.

80. Since 2016, Ms. Feingold has instructed me to commence three other copyright infringement actions, all of which settled relatively promptly.

81.   In 2015, I filed and was the lead attorney in *Feingold v. Rock Paper Photo, LLC* (1:15-cv-05947-LAK (S.D.N.Y.)) which settled prior to the conduct of any depositions.

82.   In 2016, I filed and was the lead attorney in *Feingold v. Rebdolls and Griselangel Paula* (1:16-cv-04006-ILG-SMG (E.D.N.Y.)) which was settled before an answer was filed by any defendants.

83.   Also in 2016, I filed and was the lead attorney in *Feingold v. Daniello* (1:16-cv-06463-LTS-AJP (S.D.N.Y.)) which settled pursuant to the parties attending a settlement conference before Judge Peck.

84.   Additionally, since 2015, I have also been Ms. Feingold's attorney in relation to other settlements, which are subject to confidentiality agreements, and were made prior to the commencement of proceedings.

85.   Additionally, since 2015, I have sent numerous DMCA "takedown" notices on behalf of Ms. Feingold. In all cases, except for this matter, Ms. Feingold took no further action.

86.   Additionally, I have drafted template DMCA takedown notices for Ms. Feingold to send herself. My understanding is that Ms. Feingold has sent numerous of her own DMCA takedown notices and, again, has not proceeded to litigation.

<u>In this matter</u>

87.   Ms. Feingold's conduct and attitude in this matter has been focused on enforcing her rights and efficiently progressing the case.

88.   If RageOn had honored its initial representation in January 2018 to remove all infringing materials within 24 hours, this matter would have proceeded no further.

89.   Ms. Feingold has largely kept to all deadlines and made timely, and proportionate, requests for extensions of time, all with the consent of Defendant's counsel.

90.   Ms. Feingold has engaged in no unnecessary motion practice.

91.   Ms. Feingold has only sought the intervention of the Court on a limited basis.

92.   Ms. Feingold has largely consented to requests made by Defendant's counsel and sought to resolve disputes without involving the Court.

93.   At all times, Ms. Feingold has been open to discussing settlement on appropriate terms.

94.   Ms. Feingold has also undertaken certain expenses in order to expressly address Defendant's concerns about her case, and in an effort to promote settlement.

95.   For example:

   (a)   obtaining an original copy of the *Rolling Stone Magazine* containing the Reeves Photograph (Dkt. 125, ¶¶ 38-39; Dkt. # 125-9); and

   (b)   procuring record copies of the deposit copies of the Photographs from the Copyright Office. (Dkt. # 125, ¶¶ 40-45, 48-50; Dkt. # 125-8; Dkt. # 125-12)

**Ms. Feingold's entitlement her attorneys' fees, and costs**

96.   Pursuant to Section 505 of the Copyright Act the Court may, in its discretion, also award Ms. Feingold her reasonable attorneys' fees, and costs, as she is the prevailing party in this matter.

Prior submissions

97.   In relation to the billable time spent on this matter, I refer the Court to my previous declarations, specifically:

(a)     In Dkt. # 110, ¶ 59 and Dkt. # 110-8, which show 30.3 hours were expended in relation to both that submission and the scheduling of Mr. Krilivsky's deposition, which represents an amount of $12,551.00 (see Dkt. # 110-8) based on my firm's standard billable value for work performed;

(b)     In Dkt. # 125, ¶¶ 172-173 and Dkt. # 125-38, which show 283.70 hours were expended on this matter between January 2016 and October 2018 (abut 13 hours per month), which represents an amount of $82,264.00 (see Dkt. # 125-38) based on my firm's standard billable value for work performed. Due to an "bug" I was, at the time, unable to generate a final invoice for this time, but rather only show a "preview" of the invoice. The bug has been resolved and attached hereto as **Exhibit H** is true and correct copy of a "final" invoice for the same amount of attorney's fees ($82,624), the same amount of costs ($2,893.35), and the same amount of total hours (283.70) as previously shown in the "preview"; and

(c)     In Dkt. # 151, ¶¶ 34-35 and Dkt. # 151-5, which show 27.3 hours were expended in relation filing Ms. Feingold's reply papers in support of her motion for summary judgment, which represents an amount of $11,579.00 (see Dkt. # 151-5) based on my firm's standard billable value for work performed.

98.     In relation to costs expended by my firm on behalf of Ms. Feingold in this matter, I refer the Court to my previous declarations, specifically:

(a)     In Dkt. # 125, ¶¶ 192-195, Dkt. # 125-38, and Dkt. # 125-39 costs incurred of $2,893.35; and

(b)      In Dkt. # 151, ¶¶ 37-39, Dkt. # 151-5, and Dkt. # 151-6 costs incurred of $50.67.

Subsequent attorneys' fees

99.      Since filing our reply submissions in support of Ms. Feingold's motion for summary

judgment on December 20, 2019 (Dkt. # 149 et seq.), and based on contemporaneous

time records, my firm has dedicated to this matter:

(a)      20.00 hours of my time;

(b)      2.7 hours of Maddie Brown's time; and

(c)      1.5 hours of Morgan Romagna's time.

100.     The billable value of this time is $10,282.00.[1]

101.     Attached as **Exhibit I** are true and correct contemporaneous time records from

December 31, 2019 through today's filing, generated by my firm's time recording and

billing platform.

My firm's experience and billable rates

102.     My experience is set forth at Dkt. # 125, ¶¶ 178-182.

103.     Maddie Brown's experience is set forth at Dkt. # 151, ¶¶ 30-33.

104.     Since that time, Ms. Brown was admitted to the New York bar in May 2020.

105.     Ms. Brown's customary billable rate for litigation matters of this type increased from

$175 per hour, as a law clerk, to $210 per hour, as an associate.

106.     Morgan Romagna is an associate of my firm.

---

[1] Counsel has an alternative billing arrangement with Ms. Feingold, so this amount represents the standard billable value of time spent.

107.    Ms. Romagna was admitted to the New York bar in April 2019.

108.    Ms. Romagna's customary billable rate for litigation matters of this type is $210 per

        hour.

Subsequent costs

109.    Since December 31, 2019, my firm has incurred $30.00 in costs in this matter.

110.    I have also discovered a cost incurred in March 2018, that was not previously including

        in our submissions, in the amount of $81.75. This cost related to attempted service on

        Defendant in Ohio.

111.    The combined amount of these two costs is $111.75, which is shown on **Exhibit I**.

112.    Attached as **Exhibit J** are true and correct copies of the above two invoices, both of

        which I certify were incurred directly in relation to this matter and both of which have

        been paid.

Write-offs and unbilled time

113.    I also note that I have written off significant periods of time in this matter since its

        commencement in January 2018, the most notable being:

        (a)     Writing off all of my time from April 13-15, 2018 in relation to the application

                before Judge Swain concerning the threats made by Mr. Krilivsky to me and my

                family;

        (b)     Writing off all of Kevin Murphy's time in August 2018, when Mr. Murphy took

                over carriage of the matter while I was on vacation in Australia. Mr. Murphy was

                a partner at my firm at the time, is currently a partner at Wuersch & Gering LLP,

and was admitted to the New York bar in 1996. His standard billable rate in 2018 would have been the same as mine ($470 per hour), if not higher;

(c)   Writing off all of my time in August 2018 as I monitored matters while on vacation, including liaising with Mr. Murphy as to strategy;

(d)   Writing off all of my time in excess of 20 hours in the preparation of this submission, including:

    (i)   Rounding all of my time entries down to the nearest 0.5 of the hour; and

    (ii)   Writing off in excess of 10 hours spent over the Labor Day Weekend finalizing these submissions; and

(e)   Writing off all of Robert Garson's time in relation to the drafting, editing, reviewing and finalizing of his declaration.

114.   Additionally, I note that I have been in regular communication with Ms. Feingold throughout 2020 concerning this matter, and have written off all time in relation to those emails, telephone calls and in-person meetings.

115.   I have also dedicated time in communication with both Defendant and Defendant's counsel this year. While I have never responded directly to Defendant, I have forwarded many of Mr. Krilivsky's emails directly to Ms. Tufariello and reminded her to inform her client to route all communications to me from RageOn via herself. I have written off all of this time.

116.   Finally, all time taken by me and my firm to review this Court's Opinion and Order of July 15, 2020 (Dk. # 153) has also been written off.

117.   Accordingly, as the prevailing party in this matter, Ms. Feingold seeks:

(a)      $116,676.00 in reasonable attorneys' fees; and

(b)      $3,055.77 in reasonable costs,

Dated: Brooklyn, New York
       September 8, 2020

Respectfully submitted,
Garson, Segal, Steinmetz, Fladgate LLP

By:      ____/s/ Chris Fladgate_____
Chris J. Fladgate (CF1999)
164 West 25th Street, Suite 11R
New York, NY 10001
Telephone: (212) 380-3623
Facsimile: (347) 537-4540
Email: cf@gs2law.com